IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| 35 N. FOURTH STREET, LTD., | ) |
| Plaintiff, | ) |
| v. | ) Civil No. _____ |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

The plaintiff, 35 N. Fourth Street, Ltd. ("Plaintiff"), by its undersigned counsel, brings this action for a refund of erroneously assessed federal income tax penalties against the Defendant, the United States of America, and alleges as follows.

## NATURE OF THE ACTION

1. Plaintiff brings this action under 26 U.S.C. § 7422 for the recovery of $10,000 in federal income tax penalties erroneously assessed and collected by the Internal Revenue Service (the "IRS") with respect to Plaintiff's tax year ending December 31, 2017 (the "2017 Tax Year"), plus interest thereon as provided by law.

## PARTIES

2. Plaintiff is an Ohio limited liability company that is classified as a partnership for Federal income tax purposes. Plaintiff's principal place of business is in Columbus, Ohio.

3. Ninety-nine percent of Plaintiff's interests are owned by GBX 35 N. Fourth LLC ("GBX"), which in turn is wholly owned by Historic Investment Fund 2017 LLC ("Fund"). GBX is a disregarded entity; the Fund is classified as a partnership for Federal income tax purposes.

4. Plaintiff uses a calendar year as its taxable year for U.S. federal income tax purposes.

5. Defendant is the United States of America.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422.

7. On or about September 2021, the IRS assessed a penalty under 26 U.S.C. § 6707A ("section 6707A")[1] in the amount of $10,000 against Plaintiff. Section 6707A is an assessable penalty under subchapter B of Chapter 68 of U.S.C. Title 26. The section 6707A penalty is not a partnership item and is not subject to Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") procedures. *See* Chief Counsel Advisory 200913028; Internal Revenue Manual § 4.32.4.3.2.

8. Per section 6671, the section 6707A penalty is treated in the same manner as a tax imposed under U.S.C. Title 26.

9. On or about October 22, 2021, Plaintiff paid the full amount of the $10,000 section 6707A penalty assessed by the IRS. Plaintiff has made full payment of all U.S. federal income tax liabilities that the IRS has assessed for Plaintiff's 2017 Tax Year. *See Flora v. United States*, 362 U.S. 145 (1960).

10. Plaintiff has complied with the statutory requirements of exhausting its administrative remedies. *See* 26 U.S.C. §§ 6532, 7422. On December 29, 2021, Plaintiff timely

---

[1] Unless otherwise specified, all references to "section" are to the Internal Revenue Code of 1986, as amended (the "Code"), and all references to "Treas. Reg. §" are to the Treasury regulations thereunder.

filed Form 843 seeking a refund of taxes paid for 2017 Tax Year (the "Claim for Refund"). The Claim for Refund was filed within two years of the date of payment.

11. The IRS has not paid any refund or otherwise acted on the Claim for Refund. More than six months have expired since Plaintiff filed the Claim for Refund. 26 U.S.C. § 6532(a)(1).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(a)(1) and 28 U.S.C. § 1391(c)(2) because Plaintiff's principal place of business is located within this judicial district.

## FACTUAL ALLEGATIONS

13. Plaintiff owns an historic property known as the H.C. Godman Co. Building in Columbus, Ohio ("Building").

14. The Fund issued a Private Placement Memorandum in 2017 ("PPM") offering an investment to accredited investors. The PPM stated the Fund's intentions to invest in historic real estate that qualified for federal and state tax incentives. The PPM stated that one of those incentives is an historic preservation easement deduction qualifying under section 170(h).

15. In recognition of the limitations provided in Notice 2017-10, the PPM provided that any deductions flowing from the Fund's activities were capped at 2.45 times an investor's investment in the Fund. The PPM states: "[T]he Operating Agreement will limit such deductions with an additional cap of two and four and one-half tenths times (2.45x) the amount of your investment in the Company." Section 8.2 of the Operating Agreement for the Fund states: "[T]he allocation of Easement Deductions … shall not exceed an amount equal to 2.45 times such Member's aggregate Capital Contributions."

16. Through its ownership in GBX, the Fund invested in Plaintiff on December 20, 2017.

17. On December 27, 2017, Plaintiff donated a conservation easement on the Building, a certified historic structure under section 170(h)(4), to Heritage Ohio, Inc., a qualified organization under section 170(h)(3).

18. Subsequently, Plaintiff obtained a qualified appraisal from Clark Davis PC, which valued the donation of a façade easement and development rights at $19,991,000.

19. Plaintiff reported this amount on its Partnership Return of Income and allocated such amount among its partners, including GBX. Because GBX is a disregarded entity, the deduction was reported on the Partnership Return of Income filed by the Fund.

20. In accordance with the limitations set out in the Fund's PPM and Operating Agreement, the amount of the deduction that was allocated to Fund investor-partners was capped at 2.45 times any investor's investment. The K-1s for each of the investors in the Fund reported a deduction of no more than 2.45 times the investment by each investor.

21. Plaintiff timely filed its Form 1065 tax return for the 2017 Tax Year.

22. Plaintiff carefully examined the elements in Notice 2017-10 and determined that the transaction was not the same or substantially similar to the syndicated conservation easement transaction described in Notice 2017-10. Because the transaction did not meet the definition of a listed transaction as defined by Notice 2017-10, Plaintiff was not required to and did not file Form 8886, Reportable Transaction Disclosure Statement, with its return.

23. Nonetheless, the IRS erroneously concluded in a Revenue Agent's Report ("Report") dated December 1, 2020, that the "transaction is substantially similar to the transaction described in Section 2 of Notice 2017-10 and is therefore identified as a listed transaction for the purposes of § 1.6011-4(b)(2) and §§ 6111 and 6112."

24. As a result, the IRS determined Plaintiff was subject to assessment of a penalty under section 6707A in the amount of $10,000 for failing to disclose participation in a listed transaction as required under Notice 2017-10.

## OVERVIEW OF RELEVANT LAW

25. Section 170(h) provides a charitable contribution deduction for the contribution of a qualified real property interest to a qualified organization exclusively for conservation purposes, including "the preservation of an historically important land area or a certified historic structure." Qualified real property interests under section 170(h) are commonly referred to as conservation easements.

26. On December 23, 2016, the Treasury Department and the IRS issued Notice 2017-10, which identified types of syndicated conservation easements that offer the potential for abuse.

27. Section 2 of Notice 2017-10 outlined four requirements that must be present in order for a conservation easement to be a listed transaction:

1) An investor receives promotional materials that offer prospective investors in a pass-through entity the possibility of a charitable deduction that equals or exceeds an amount that is 2.5 times the investor's investment.
2) The investor purchases an interest, directly or indirectly, in the pass-through entity that holds real property.
3) The pass-through entity that holds the real property contributes a conservation easement encumbering the property to a tax-exempt entity and allocates the deduction to the investor, either directly or through one or more tiers of pass-through entities.
4) The investor reports a charitable contribution deduction with respect to the conservation easement on his or her tax return.

28. Notice 2017-10 identified transactions entered into on or after January 1, 2010, that are the same as or substantially similar to the above-described transaction as "listed transactions" for purposes of Treas. Reg. §1.6011-4(b)(2) and sections 6111 and 6112. Persons

entering into listed transactions during the relevant period must disclose the transactions as described in Treas. Reg. § 1.6011-4.

29. Notice 2017-10 provides that participants in transactions described in the Notice who fail to make the required disclosure will be subject to penalties under section 6707A.

## THE IRS'S ASSESSMENT IS ERRONEOUS

### A. Notice 2017-10 Is Inapplicable Because It Was Issued Unlawfully in Violation of the Administrative Procedure Act

30. Plaintiff is not liable for the section 6707A penalty because Notice 2017-10 was issued in violation of the notice-and-comment requirements of the Administrative Procedure Act, 5 U.S.C. § 551, et seq. ("APA").

31. But for Notice 2017-10, the IRS would have no basis to assert that Plaintiff engaged in a listed transaction and assess the section 6707A penalty for purported noncompliance with the Notice.

32. The APA was enacted in 1946 to provide procedural safeguards for action by federal administrative agencies and require public participation in the rulemaking process.

33. "The APA establishes the procedures federal administrative agencies use for 'rule making,' defined as the process of 'formulating, amending, or repealing a rule." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95 (2015) (quoting 5 U.S.C. § 551(5)).

34. A "rule" is defined as a "statement of general or particular applicability and future effect" that is designed to "implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4).

35. Section 553 of the APA sets forth a three-step process for "notice and comment rulemaking": (1) an agency must issue a "[g]eneral notice of proposed rulemaking," ordinarily by publication in the Federal Register"; (2) if "notice [is] required," the agency must "give interested persons an opportunity to participate in the rule making through submission of written

data, views, or arguments"; and (3) when the agency promulgates the final rule, it must include in the rule's text "a concise general statement of [its] basis and purpose." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. at 95.

36. The APA empowers federal courts to "hold unlawful and set aside agency action, findings, and conclusions found to be … without observance of procedure required by law". 5 U.S.C. § 706(2).

37. The APA, however, distinguishes between "legislative rules," which are subject to the APA's notice-and-comment requirements, and "interpretive rules," which are not. *See* 5 U.S.C. § 553(b). Generally, "a rule that 'intends to create new law, rights or duties' is legislative, while a rule that 'simply states what the administrative agency thinks the statute means, and only reminds affected parties of existing duties' is interpretive." *Tenn. Hosp. Ass'n v. Azar,* 908 F.3d 1029, 1042 (6th Cir. 2018) (quoting *Michigan v. Thomas,* 805 F.2d 176, 182-83 (6th Cir. 1986)).

38. Listing notices, like Notice 2017-10, are legislative rules under Sixth Circuit precedent. *See Mann Construction, Inc. v. United States,* 27 F.4th 1138, 1143 (6th Cir. 2022) (finding Notice 2007-83 is a legislative rule because taxpayers "had no obligation to provide information regarding listed transactions like this one to the IRS before the Notice.").

39. Notice 2017-10 is a legislative rule which was required by the APA to be issued with notice and comment.

40. Nonetheless, Notice 2017-10 was issued without prior notice or any mechanism for comment. Notice 2017-10 became effective the day it was issued, December 23, 2016, and applies retroactively to transactions entered into on or after January 1, 2010.

41. In another case, Defendant admitted that Notice 2017-10 was issued without the notice-and-comment procedures required by the APA.  *See* Answer, at ¶¶ 4, 20, *GBX Assoc. LLC, v. United States,* No. 1:22-cv-00401-PAB (N.D. Ohio May 20, 2022), ECF No. 15.  A copy of this answer filed by Defendant is attached as Exhibit A.

42. Listing notices that were promulgated by the IRS without following the notice-and-comment procedures of the APA are invalid and must be set aside under *Mann Construction, Inc. v. United States,* 27 F.4th 1138 (6th Cir. 2022).  *See also CIC Servs., LLC v. Internal Revenue Serv.,* No. 3:17-CV-110, --- F.Supp.3d ----, 2022 WL 985619, at *4 (E.D. Tenn. Mar. 21, 2022) ("Notice 2016-66 is a legislative rule that is invalid because the IRS failed to observe notice-and-comment procedures required by the APA.").

43. In issuing Notice 2017-10, the IRS failed to comply with the requirements for notice and comment under 5 U.S.C. § 551 et seq.  This noncompliance with the APA renders Notice 2017-10 invalid and unlawful.

44. Defendant has admitted that Notice 2017-10 is invalid under *Mann Construction, Inc. v. United States,* 27 F.4th 1138 (6th Cir. 2022).  Exhibit A, at ¶¶ 6, 63.

   **B.   Notice 2017-10 Is Inapplicable Because the Transaction Is Not Substantially Similar**

45. In the alternative, Plaintiff is not liable for the section 6707A penalty because Plaintiff's transaction is neither the same as, nor substantially similar to, the transaction described in Notice 2017-10, because the 2.5 times threshold identified in the Notice was not met.

46. Notice 2017-10 did not specify that *all* syndicated conservation easement transactions are listed transactions.  Instead, it stated that only those transactions that offer a

deduction of *at least* 2.5 times the investor's investment fall within Notice 2017-10's definition of a listed transaction.

47. Thus, the plain language of Notice 2017-10 provides a bright-line threshold: a charitable deduction equal to or above 2.5 times the investor's investment falls within the terms of the Notice, whereas anything below the 2.5 threshold does not.

48. The 2.5 threshold was not picked at random by the IRS.  It was chosen to provide an objective standard.  At the time Notice 2017-10 was issued, the highest marginal income tax rate for individuals was 39.6%.  A deduction equaling or exceeding 2.5 times an investor's investment returns 99% of an investor's money in the form of the tax benefit from a charitable deduction.

49. The IRS's Report minimizes the 2.5 threshold in its analysis, noting that "[t]he easement transaction entered into fits all other descriptors outlined in Section 2 of Notice 2017-10" and then summarily concludes, without support, that "[t]he transaction is substantially similar to the transaction described in Section 2 of Notice 2017-10 and is therefore identified as a listed transaction for the purposes of § 1.6011-4(b)(2) and §§ 6111 and 6112[.]"

50. The Report does not explain how meeting only three of the four mandatory factors renders the transaction "substantially similar."  This omission is for one simple reason: the transaction is not substantially similar.

51. "Substantially similar" is defined in Treas. Reg. § 1.6011-4(c)(4) as "any transaction that is expected to obtain the same or similar types of tax consequences and that is either factually similar or based on the same or similar tax strategy."  Here, the first component – a "transaction that is expected to obtain the same or similar types of tax consequences" – is unmet.

52. Capping the deduction in a syndicated conservation easement transaction at 2.45 times an investor's investment—as the Fund did—meant that the investors could not achieve the same or substantially similar tax consequences, essentially a full return of their invested amount through the tax deduction, that they would have received if the deduction was 2.5 times or more of the investor's investment.

53. Because Notice 2017-10 is inapplicable to Plaintiff's transaction, Plaintiff is not liable for a penalty for failure to report a listed transaction under section 6707A.

## COUNT ONE

54. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55. The IRS's assessment of a section 6707A penalty against Plaintiff is legally erroneous.

56. Notice 2017-10 is invalid and does not provide a basis for assessing a section 6707A penalty against Plaintiff.

57. Accordingly, Plaintiff is entitled to a refund in the amount of $10,000 of tax and/or penalties paid for its 2017 Tax Year, or such greater amount of taxes and interest, including overpayment interest thereon, as provided by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in its favor and against Defendant as follows:

i. That this Court declare Notice 2017-10 invalid and vacate it on a nationwide basis;

      ii.      That Plaintiff be refunded the sum of $10,000, or such greater amount as this Court may determine to be legally refundable, together with statutory interest thereon as provided by law;

      iii.      That this Court award Plaintiff its costs, including attorney's fees, and such other and further relief as this Court deems just and proper.

Dated this 4th day of July 2022.

    Respectfully submitted,

    /s/ *Derek C. Smith*
    Derek C. Smith, Trial Attorney
    Ohio Bar # 69096
    STEPTOE & JOHNSON LLP
    227 West Monroe Street, Suite 4700
    Chicago, IL 60606
    Telephone:    (312) 577-1247
    Facsimile:    (312) 577-1370
    dsmith@steptoe.com

    Lawrence M. Hill
    STEPTOE & JOHNSON LLP
    1114 Avenue of the Americas
    New York, NY 10036
    Telephone:    (212) 506-3934
    Facsimile:    (212) 506-3950
    lhill@steptoe.com
    (*pro hac vice motion forthcoming*)

    Caitlin R. Tharp
    STEPTOE & JOHNSON LLP
    1330 Connecticut Avenue NW
    Washington, DC 20036
    Telephone:    (202) 429-1391
    Facsimile:    (202) 429-3902
    ctharp@steptoe.com
    (*pro hac vice motion forthcoming*)

    *Attorneys for Plaintiff*
    *35 N. Fourth Street, Ltd.*