**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

35 N. Fourth Street, Ltd.,

       **Plaintiff,**

   v.

**United States of America,**

       **Defendant.**

**Case No. 2:22-cv-2684**

**Judge Michael H. Watson**

**Magistrate Judge Jolson**

## OPINION AND ORDER

35 N. Fourth Street, Ltd. ("Plaintiff") moves for costs and attorneys' fees.
ECF No. 61. The requested costs and fees stem from a tax refund dispute
between Plaintiff and the Internal Revenue Service ("IRS") over a $10,000
penalty. IRS initially assessed this penalty on Plaintiff under 26 U.S.C. § 6707A
("section 6707A") for failure to report a syndicated conservation easement
transaction—which the IRS designates as a "listed transaction" per Notice 2017-
10. After Plaintiff conferenced to no avail with IRS Independent Office of Appeals
("IRS Appeals"), Plaintiff paid the $10,000 penalty but requested a refund. While
Plaintiff's refund request was pending with the IRS, the United States Court of
Appeals for the Sixth Circuit cast doubt on the propriety of Notice 2017-10 by
setting aside a similarly promulgated Notice (designating a different kind of
transaction as a "listed transaction") for failure to follow notice-and-comment
procedures. *Mann Constr. v. United States*, 27 F.4th 1138 (6th Cir. 2022).

Once their administrative request for refund had been pending for six months, and with *Mann* in hand, Plaintiff filed this suit. Rather than defending Plaintiff's suit on the merits, the IRS refunded the $10,000 penalty plus $450.93 in interest. Plaintiff now requests $167,570.00 in attorneys' fees and $827.00 in costs under 26 U.S.C. § 7430 ("section 7430") for the IRS administrative proceedings plus some (not all) proceedings in this Court. Mot., ECF No. 35.

To grant Plaintiff's request, this Court would have to find that it was never "reasonable" for the IRS (or the district court it persuaded in *Mann*) to believe Notice 2017-10 was valid. The Court declines to make such a finding. For that reason, as elaborated below, the motion is **DENIED**.

## I. BACKGROUND

### A. Legal Background

The federal Government bases its tax collection system primarily on self-reporting. *See United States v. Bisceglia*, 420 U.S. 141, 145 (1975). "There is legal compulsion, to be sure, but basically the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability." *Id.* The power to determine what information taxpayers must self-report lies with the Secretary of the Treasury, per a Congressional delegation. *See* 26 U.S.C. § 6011. Congress specifically empowers the Secretary to identify and mandate reporting of transactions with tax-avoidance potential. *See* 26 U.S.C. § 6707A(c). Congress further permits

the Secretary to impose monetary penalties and criminal sanctions for noncompliance with these reporting requirements. *See id.* § 6707A(a).

Section 6707A grants the Secretary this authority over two kinds of transactions: "reportable transactions" and "listed transactions." *Id.* § 6707A(c). A "reportable transaction" is one that has the "potential for [illegal] tax avoidance or evasion," as determined by the Secretary. *Id.* § 6707A(c)(1). A "listed transaction" is one that "is the same as, or substantially similar to, a transaction" that the Secretary has identified as a "reportable transaction." *Id.* § 6707A(c)(2).

Under the Secretary's section 6707A authority, the IRS designated certain conservation easement transactions as "listed transactions" in Notice 2017-10, referred to as a "listing notice." 2017-4 I.R.B. 544, 2016 WL 7422633. In promulgating listing notices, including Notice 2017-10, the IRS did not follow the notice-and-comment procedures of the Administrative Procedure Act ("APA"), as the IRS now admits. Resp. at 1, ECF No. 62. Instead, it promulgated them according to the procedure set out in a regulation, 26 C.F.R. § 1.6011-4, which in turn, was promulgated under 26 U.S.C. § 6011. The IRS bypassed the notice-and-comment procedure for listing notices because it took (and continues to take in other circuits) the view that those procedures were not required. Resp. at 1, 3, ECF No. 62.

Those procedures are generally required for an agency action that will have the force and effect of law. 5 U.S.C. § 553. But Congress may statutorily exempt agency action from the notice-and-comment process. *See, e.g., Asiana*

*Airlines v. F.A.A.*, 134 F.3d 393 (D.C. Cir. 1998) (holding that Congress exempted the FAA from notice-and-comment procedures in implementing certain fees under the Federal Aviation Reauthorization Act). Exemptions of this sort "are not lightly to be presumed." *Marcello v. Bonds*, 349 U.S. 302, 310 (1955). Even so, Congress need not "employ magical passwords in order to effectuate an exemption from the [APA]." *Id.* Rather, the decisive question is whether "the statute at hand indicates that Congress intended to abrogate the APA's notice-and-comment requirements in a 'clear' or 'plain' way in a later statute." *Mann*, 27 F.4th at 1145 (internal citations omitted). The IRS previously took the position that Congress did so with section 6707A, a position which the Court analyzes in depth below, after providing some factual background.

## B. Factual Background

### 1. Plaintiff's Administrative Proceedings

Several years ago, Plaintiff participated in an easement transaction, which Plaintiff did not report. Resp. at 1–2, ECF No. 62. Notice 2017-10 and section 6707A required Plaintiff to report this transaction, at least according to the IRS. *Id.* So, the IRS sent Plaintiff a form proposing a $10,000.00 penalty against Plaintiff. *Id.* Along with the penalty form, the IRS sent a letter notifying Plaintiff that it could request a conference with the IRS Appeals within 30 days ("the 30-day letter"). Mot. at 2, ECF No. 61.

Plaintiff reports that it timely requested a conference with IRS Appeals. *Id.* After conferencing with IRS Appeals twice, Plaintiff received a letter from IRS

Appeals requesting payment of the $10,000 penalty ("the decision letter").  *Id.*

Plaintiff paid the penalty but timely filed IRS Form 843 seeking a full refund of the

penalty.  *Id.*

### 2.    The IRS's contemporaneous litigation in *Mann*

In parallel, the IRS was defending a challenge to a different listing notice

(Notice 2007-83) in the Eastern District of Michigan and then the Sixth Circuit.

*Mann Constr., Inc. v. United States*, 539 F. Supp. 3d 745 (E.D. Mich. 2021),

*rev'd*, 27 F.4th 1138 (6th Cir. 2022).  Like Notice 2017-10, Notice 2007-83

designates a "listed transaction."[1]  *Mann*, 539 F. Supp. 3d at 747–48.  And like

Notice 2017-10, the IRS promulgated Notice 2007-83 without following the APA's

notice-and-comment procedures.  *Id.* at 757.  Based on this noncompliance, the

plaintiff in *Mann* challenged the validity of Notice 2007-83 under the APA.  *Id.* at

746.

The month before Plaintiff first conferenced with IRS Appeals here, the

district court in *Mann* granted the IRS's motion for summary judgment on the

APA claim.  *See generally id.*  The IRS raised one argument in that motion:

Congress authorized the IRS to promulgate Notice 2007-83 without the notice-

and-comment period required by the APA.  *See id.* at 757.  The IRS persuaded

the *Mann* district court that "the text, structure, and history of section 6707A and

---

[1] The transaction at issue in *Mann* involved employee-benefit plans featuring cash-value life insurance policies.

related Treasury regulations express Congress's clear intent that APA notice and comment procedures need not be followed." *Id.* at 760 (cleaned up).

Several months after Plaintiff paid the $10,000 penalty and submitted Form 843 for a refund here, the Sixth Circuit in *Mann* reversed the district court's grant of summary judgment and set aside Notice 2007-83 for violating the APA. *Mann*, 27 F.4th at 1148. In essence, the Sixth Circuit found the district court's rationale too "winding and elaborate" to show a "clear" displacement of the APA's notice-and-comment requirement. *Id.* at 1147.

### 3. The Post-*Mann*, Pre-Complaint Period

Although the Sixth Circuit published *Mann* while Plaintiff's Form 843 refund request was pending, Plaintiff did not raise *Mann*'s potential effect on Notice 2017-10 with the IRS administratively. *See* Resp. at 3, ECF No. 62 ("In the wake of that ruling, Plaintiff did not contact IRS Appeals or otherwise seek to amend its administrative claim."). Nor did the IRS resolve Plaintiff's pending administrative refund claim on its own initiative. Mot. at 2, ECF No. 61.

### 4. Plaintiff's Judicial Proceedings

A few days after Plaintiff's administrative refund request had been pending for six months[2] (and a few months after the Sixth Circuit decided *Mann*), Plaintiff filed suit in this Court seeking a refund of the $10,000 penalty it paid. *Id.* The parties agreed to a twenty-one-day extension for the IRS to respond to Plaintiff's

---

[2] 26 U.S.C. § 6532(a)(1) requires would-be tax refund plaintiffs to wait sixth months for a decision from the Secretary before filling suit under § 7422, as Plaintiff here did.

Complaint. *Id.* at 3 (citing ECF No. 8). Within that twenty-one-day window, the IRS authorized a refund of the $10,000 (plus interest) and moved to dismiss the case as moot. *Id.* (citing ECF No. 12-1).

Plaintiff opposed dismissal, ECF No. 15, and moved for $133,410 in attorneys' fees, ECF No. 16. The Court denied that fees motion without prejudice. ECF No. 42.

The Court stayed the case while the IRS processed Plaintiff's refund. Nov. 11, 2022 Notation Order, ECF No. 18. While the case was stayed, the IRS announced it would no longer enforce listed-transaction requirements in the Sixth Circuit because of *Mann*. *See* Announcement 2022-28, 2022-52 I.R.B. 659, 2022 WL 17491928. Also during the stay, Plaintiff amended its Complaint to assert a second claim. *See* ECF No. 38. This second claim sought a nationwide injunction of Notice 2017-10. *Id.*

Once the IRS finalized the refund, the Court dismissed both of Plaintiff's claims as moot, ECF Nos. 45, 57, and entered final judgment dismissing the case for lack of subject-matter jurisdiction, ECF No. 58. Plaintiff has not appealed.

Plaintiff then moved for fees under 26 U.S.C. § 7430, requesting an award of $167,570 in attorneys' fees and $827 in costs. Mot., ECF No. 61. These amounts purportedly cover less than half what Plaintiff paid from when the IRS assessed the $10,000 penalty (on December 1, 2020) until this Court stayed Plaintiff's refund claim (on November 3, 2022). *Id.* at 10.

## II.    STANDARD OF REVIEW

In a tax-refund suit, courts may award "(1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and (2) reasonable litigation costs incurred in connection with such court proceeding" to the "prevailing party."  26 U.S.C. § 7430(a).  A party's entitlement to such an award is subject to several explicit "limitations," *id.* § 7430(b),[3] as well as other implicit limitations created by the statutory definitions of "reasonable litigation costs," *id.* § 7430(c)(1), and "prevailing party," *id.* § 7430(c)(4).

Under section 7430, "reasonable litigation costs" and "reasonable administrative costs" together include: "reasonable court costs"; "any administrative fees or similar charges imposed by the Internal Revenue Service"; and, as relevant here, "reasonable fees paid or incurred for the services of attorneys in connection with the [] proceeding, except that such fees shall not be

---

[3] A court may not award fees and costs for any portion of the administrative or court proceeding during which the prevailing party "unreasonably protracted" the proceeding. 26 U.S.C. § 7430(b)(3).  Although some of the IRS's allegations smack of "unreasonable protraction," the IRS does not invoke this limitation explicitly for any portion of the administrative or judicial proceeding.  And, as discussed below, Plaintiff's entitlement to fees can be resolved on whether it is a "prevailing party."  The Court thus does not analyze whether Plaintiff "unreasonably protracted" any portion of the proceedings for which it seeks fees.

    The party seeking a fee award from a court must also: (1) exhaust available administrative remedies at the IRS before commencing the civil proceeding; (2) show that the requested award represents costs not attributable to any party other than the United States; and (3) file before the 91st day after the IRS's final decision if they seek fees in an administrative (rather than a court) proceeding.  26 U.S.C. § 7430(b)(1)–(2), (4).  These limitations do not apply here, or, at least, the IRS has not made the Court aware of any reason they might.

in excess of $125 per hour unless the court determines that a special factor . . . justifies a higher rate." *Id.* § 7430(c)(1)–(2). Plaintiff requests all three.

The Court cannot, however, award Plaintiff administrative or litigation costs unless Plaintiff was a "prevailing party." Section 7430(c)(4) defines "prevailing party" according to many criteria, three of which are in issue.

One, Plaintiff must prove that it "substantially prevailed" with respect to the amount in controversy or the most significant issue. 26 U.S.C. § 7430(c)(4)(A)(i). Although the parties contest the issue, the Court does not decide whether Plaintiff "substantially prevailed."[4]

Two, Plaintiff must meet a net-worth requirement. Section 7430(c)(4)(A)(ii) incorporates by reference into its definition of "prevailing party" two other United States Code provisions. One of the referenced Code provisions is 28 U.S.C. § 2412(d)(2)(B), which requires that "any partnership"—like Plaintiff—not have a net worth exceeding $7,000,000 at the time the civil action was filed. The parties

---

[4] Plaintiff asserts that a party substantially prevails with respect to the amount in controversy if the IRS reverses a penalty it had previously imposed—as the IRS has here. Mot. at 4, ECF No. 61 (citing *Heasley v. Comm'r*, 967 F.2d. 116, 122 (5th Cir. 1992)). The IRS responds that a party does not substantially prevail if that party achieves its desired result not through a judgment on the merits but through the IRS's voluntary action—as Plaintiff has here. Resp. at 5, ECF No. 62 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Resources*, 532 U.S. 598 (2001)). Plaintiff replies that *Buckhannon* does not apply to section 7430. Reply at 5–7, ECF No. 63. Because the Court decides this case on other grounds, it need not (and so does not) resolve *Buckhannon*'s impact on the standard for "substantially prevailing" under section 7430.

dispute whether the Court must aggregate the net worth of Plaintiff's partners in determining its net worth.[5] The Court does not address this issue either.

Three, for Plaintiff to be a "prevailing party," the "position of the United States" must not have been "substantially justified." 26 U.S.C. § 7430(c)(4)(B). Courts have elaborated upon the meaning of both "substantially justified" and the "position of the United States."

To be "substantially justified," the Government's position must be "justified to a degree that could satisfy a reasonable person" or have a "reasonable basis both in law and fact." *William L. Comer Fam. Equity Pure Trust v. Comm'r*, 958 F.2d 136, 139–40 (6th Cir. 1992) (quoting *Pierce,* 487 U.S. at 563–65). In short, then, "substantially justified" equates to "reasonable." *See Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 564–65 (6th Cir. 2021) (using "substantially justified" and "reasonable" interchangeably). This reasonableness standard is identical to the standard created by the same words ("substantially justified") in the Equal

---

[5] *See* Resp. at 9–12, ECF No. 62; Reply at 10–14, ECF No. 63. The IRS correctly points out that, in some cases, courts do aggregate a party's net worth for the purposes of section 2412(d)(2)(B). *Compare Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 671–674 (6th Cir. 1992) (aggregating the net worth of an association and its members because the association was participating on behalf of its members, not on its own behalf) and *Unification Church v. INS*, 762 F.2d 1077, 1081–83 (D.C.Cir.1985) (aggregating the net worth of Church members with their church because the Church, not the members, would pay all fees) *with Caremore, Inc. v. N.L.R.B.*, 150 F.3d 628, 629 (6th Cir. 1998) (declining to aggregate because plaintiff was litigating on its own behalf) and *Tri-State Steel Const. Co. v. Herman*, 164 F.3d 973 (6th Cir. 1999) (declining to aggregate a plaintiff corporation with its parent corporation because the plaintiff was litigating on its own, rather than the parent corporation's behalf). Again, because the Court decides this case on a different ground, it reserves judgment about whether this is such a circumstance.

Access to Justice Act. 28 U.S.C.A. § 2412(d)(1)(A); *see also, e.g., Midwest Sports Med. & Orthopedic Surgery, Inc. v. United States*, 2000 WL 1692947, at *1 (S.D. Ohio Sept. 19, 2000); *Carstens v. United States*, 895 F. Supp. 232, 235 (D. Minn. 1995).

The statute defines the "position of the United States" as: (A) the position taken by the United States in a judicial proceeding; and (B) the position taken in an administrative proceeding. *Id.* § 7430(c)(7). In a judicial proceeding, the position of the United States is usually established by the IRS's answer to the complaint. *See Huffman v. Comm'r*, 978 F.2d 1139, 1148 (9th Cir. 1992), *as amended* (Dec. 4, 1992). In an administrative proceeding, the position of the United States is set by the earlier of (i) the date a taxpayer receives the notice of the IRS Appeals' decision, or (ii) the date of the notice of deficiency. 26 U.S.C. § 7430(c)(7)(B).

Because this definition delineates judicial proceedings from administrative proceedings, courts have adopted a so-called "bifurcated analysis" to the substantial-justification inquiry. *See Huffman*, 978 F.2d at 1144–46 (interpreting section 7430 and upholding the district court's "bifurcated analysis"); *see also Pac. Fisheries Inc. v. United States*, 484 F.3d 1103, 1109–10 (9th Cir. 2007) (applying *Huffman*'s approach to a subsequent version of the statute). Under bifurcated analysis, the United States may take two positions: one during the administrative proceeding and a second, potentially different, position during the

judicial proceeding. *See Huffman*, 978 F.2d at 1144–46. Courts evaluate each position separately to determine whether they were justified. *See id.*

## III.   ANALYSIS

Plaintiff is entitled to neither fees nor costs because it is not a "prevailing party" within the meaning of section 7430. Even if a party meets the net worth requirement and "substantially prevails," that party is still not entitled to fees when the "position of the United States" was "substantially justified." Here, the IRS took a substantially justified position during both the administrative and judicial proceedings.

### A. The IRS took a "Substantially Justified" Position During the Administrative Proceeding.

The Court starts by identifying the IRS's position during the administrative proceeding.[6] By imposing the $10,000 penalty on Plaintiff, the IRS took the

---

[6] The parties dispute the point at which the "position of the United States" was set in Plaintiff's administrative proceeding. As stated earlier, the "position of the United States" in an administrative proceeding is set by "the earlier of (i) the date of the receipt by the taxpayer of the notice of the decision of [IRS Appeals], or (ii) the date of the notice of deficiency." 26 U.S.C. § 7430(c)(7). Plaintiff would have the Court set IRS's position as of when IRS first notified Plaintiff of the $10,000 penalty with the 30-day letter. Plaintiff argues that the 30-day letter constituted "notice of deficiency." Reply at 4–5, ECF No. 64. Some authority undermines Plaintiff's argument. *See, e.g., Fla. Country Clubs, Inc. v. Comm'r*, 122 T.C. 73, 84 (2004) ("Any interpretation that the 30–day letter constitutes a 'position' of the Government conflicts with the plain language of section 7430(c)(7)."), *aff'd*, 404 F.3d 1291 (11th Cir. 2005). The IRS would have the Court set its position later. The IRS denies issuing any "notice of deficiency." Resp. at 12–13, ECF No. 64. Whatever it did issue was not a "notice of deficiency," it contends, because Plaintiff's case was not subject to "deficiency procedures." *Id.; see also* Mot. at 18, ECF No. 61. The IRS claims its position was set instead by the "date of the receipt by the taxpayer of the notice of the decision of [IRS Appeals]." § 7430(c)(7).

The time at which the IRS's position was first set turns out to be of no consequence. At both times, IRS took the position that Plaintiff owed the $10,000 penalty under Notice 2017-10. And, at both times, the IRS presumably would have

"position" that Plaintiff violated section 6707A when it failed to report a "listed

transaction," as designated by Notice 2017-10. Plaintiff argues that this position

was not substantially justified because listing notices—like Notice 2017-10—are

invalid unless they undergo notice and comment. The IRS defends its position in

the administrative proceeding by referencing the theory it put forth in *Mann*.

Resp. at 12–13, ECF No. 62. In *Mann*, the IRS argued that listing notices need

not undergo notice and comment because section 6707A superseded the APA's

notice-and-comment requirement. 539 F. Supp. 3d at 757; 27 F.4th at 1144–48.

When considering whether the Government's position was reasonable

enough to be "substantially justified," courts consider three factors. [7] First and

---

justified that position—despite Notice 2017-10's conceded noncompliance with notice-and-comment procedure—by advancing the same theory it advanced in *Mann* with respect to Notice 2007-83: that section 6707A abrogated the APA's notice-and-comment requirement. The only potential relevance is that the *Mann* district court granted summary judgment to the IRS in the intervening time. The IRS could thus cite that case as authority for its position when IRS Appeals affirmed the penalty but not when it initially assessed the penalty. Regardless of the time at which the IRS's position was first set, its position was "substantially justified" for the reasons discussed in this section.

[7] In its motion, Plaintiff also argues that the IRS's position was not substantially justified because it contravened the IRS's own applicable published guidance. Mot. at 5, 7, ECF No. 61. A failure to follow applicable published guidance does create a rebuttable presumption that the IRS's position is not substantially justified. 26 U.S.C. § 7430(c)(4)(B)(ii). Plaintiff identifies a "Policy Statement" as the published guidance that IRS flouted in its administrative proceeding. The IRS responds that the Policy Statement is not "applicable published guidance" as defined by section 7430(c)(4)(B)(iv), and, even if it were, the Government's position was not inconsistent with the policy because nothing in the Statement suggests that it applies to listing notices. Plaintiff did not defend its argument in its reply to the IRS's response.

Assuming Plaintiff still stands by this argument, the Court rejects it. The Court agrees with the IRS that the Policy Statement does not fit into the categories defined by section 7430(c)(4)(B)(iv), at least not neatly, because the Policy Statement is not legally enforceable—unlike items in those categories. The Court also agrees that the IRS's

most important, courts examine the actual merits. *See Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021) ("it is the actual merits of the Government's . . . position that matter most" (internal citations and quotation omitted)). Second, courts consider the novelty and complexity of the issue on which the Government takes a position; the more novel or complex the issue, the more likely the Government's position was substantially justified. *See id.* at 564 ("For that reason, we distinguish between cases in which the government lost because it vainly pressed a position flatly at odds with the controlling case law and cases in which the government lost because an unsettled question was resolved unfavorably." (internal citations and quotations omitted)); *see also Nalle v. Comm'r*, 55 F.3d 189, 192 n.9 (5th Cir. 1995) (collecting cases from other circuits). And third, courts consider other "objective indicia" of reasonableness, including, for example, the views of other courts. *United States ex rel. Wall v. Circle C Constr., LLC*, 868 F.3d 466, 471 (6th Cir. 2017) (quoting *Pierce*, 487 U.S. at 569).

All three factors support the conclusion that the IRS's position was substantially justified during the administrative proceeding. As shown below, the

---

position was not inconsistent with this Policy Statement. Not only does the Policy Statement post-date and omit listing notices (as the IRS points out, Resp. at 15, ECF No 63), but the Policy Statement also nowhere suggests that IRS would follow notice-and-comment procedures even when Congress has endorsed an alternate procedure (as the IRS believed it had for listing notices). *See CIC Servs., LLC v. IRS*, 2023 WL 6457224, at *7 n.8 (E.D. Tenn. July 12, 2023) ("IRS issued this policy statement well after the Notice issued here, so it is not relevant to whether the IRS was substantially justified in its position regarding the APA in this action."), *report and recommendation adopted*, 2023 WL 5821768 (Sept. 8, 2023).

IRS supported its position in the administrative proceeding with a reasonable argument, against a basically blank legal backdrop, which the district court in *Mann* accepted.

### 1. The IRS's argument that section 6707A exempted listing notices from notice and comment was "reasonably" meritorious.

#### a. The IRS plausibly read section 6707A to "clearly" abrogate the notice-and-comment requirement based on a cross-reference and Congressional acquiescence.

The IRS's main[8] argument was that Congress expressly exempted the IRS from the APA's notice-and-comment requirement.  Under section 559 of the APA, a subsequent statute abrogates the notice-and-comment requirement if it expresses Congress's intent to do so in a clear or plain way.  *See Asiana Airlines*, 134 F.3d at 398.  Congress evinced such an intent, per either of two theories, according to the IRS (and the *Mann* district court).

---

[8] The IRS has, at times, also defended listing notices as interpretive rules, which are not subject to the notice-and-comment requirement (unlike legislative rules, which are). The Court, however, does not assess this second argument because such an evaluation is not necessary to decide Plaintiff's fees motion.  Courts generally need not scrutinize every argument or assertion advanced by the Government throughout litigation.  *See* 26 U.S.C. § 7430(c)(4)(B)(i)–(iii), (c)(A)–(B) (referring to "the position of the United States," not "a" position of the United States nor "positions" of the United States); *E.E.O.C. v. Memphis Health Ctr., Inc.*, 526 F. App'x 607, 615 (6th Cir. 2013) ("the 'position' of the government . . . requires a holistic determination of substantial justification instead of viewing the case as 'atomized line-items.'").  The IRS's main argument provides an independently sufficient basis to hold that its position was substantially justified.  The Court therefore reserves judgment as to the reasonableness of IRS's "interpretive rule" argument.  The Court notes, however, that another district court in this circuit denied a fees motion partially based on the reasonableness of that argument and the "fuzziness" of the legislative-interpretive rule distinction. *CIC*, 2023 WL 6457224, at *7.

On the IRS's first theory, Congress "clearly" intended to abrogate the notice-and-comment with a cross-reference in section 6707A. *See Mann*, 539 F. Supp. 3d at 757–760. That statute references "regulations prescribed under section 6011" in its definition of "listed transaction." 26 U.S.C § 6707A(c)(2). When Congress enacted section 6707A, the Secretary had already prescribed some regulations under section 6011. One such regulation allowed the IRS to identify listed transactions "by notice, regulation, or other form of published guidance." 26 C.F.R. § 1.6011-4(b)(2). The "notice[s]" mentioned in that regulation are normally issued without notice and comment. The IRS also presented (and the district court credited) evidence that Congress knew about this regulation when it enacted section 6707A. This evidence of actual awareness buttresses the ordinary presumption that Congress is aware of agency statutory interpretations. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978). To recap, the IRS asserted (and the *Mann* district court concluded) that Congress intended to exempt listing notices from the notice-and-comment requirement by knowingly cross-referencing a regulation that specifies a procedure other than notice and comment.

On the IRS's second theory, Congress adopted the IRS's notice-and-comment-abrogating interpretation of section 6707A by re-enacting that provision after the IRS had designated many listed transactions without notice and comment. *Mann*, 539 F. Supp. 3d at 761–62. Congress expanded section 6707A twice, extending penalties to nonprofits in 2006 and enhancing penalties

in 2010. *Id.* If Congress re-enacts a statute with an existing administrative interpretation but does not alter the interpreted portion of the statute, as Congress had for section 6707A, then courts presume Congress intended to adopt the existing administrative interpretation. *See Pons*, 434 U.S. at 580; *Boeing Co. v. United States*, 537 U.S. 437, 457 (2003) ("The fact that Congress did not legislatively override [a preexisting regulation] in enacting [a subsequent statute] serves as persuasive evidence that Congress regarded that regulation as a correct implementation of its intent."); *Reisner v. Comm'r*, 108 T.C.M. (CCH) 518 (T.C. 2014) ("Congress is presumed to be aware of, and to adopt, any longstanding administrative interpretation of the penalty statutes when it takes no step to modify that interpretation."). Following the IRS's second theory through to its conclusion, Congress's re-enactments show a clear intent to adopt the then-existing IRS interpretation of section 6707A, according to which the IRS can promulgate listing notices without notice and comment.

Other courts have accepted these two theories in other contexts that demand congressional clarity, and it was therefore reasonable for the IRS (and the district court) in *Mann* to believe that Congress "clearly" exempted section 6707A from notice and comment.

First, courts have found a clear congressional intent based on a statutory cross-reference. The United States Supreme Court's decision in *Voisine v. United States* is one such instance. 579 U.S. 686, 695–696, 698 n.6 (2016). The *Voisine* Court interpreted the reach of the federal prohibition on firearm

possession by felons convicted of the "misdemeanor crime of domestic violence."

18 U.S.C. § 922(g)(9). The issue before the Court was whether the term

"misdemeanor crime of domestic violence" reaches reckless conduct (rather than

knowing or intentional conduct). *Voisine*, 579 U.S. at 688. The Court held that it

did, largely because of a cross-reference like the one the IRS relied on in *Mann*.

*Id.* at 695–98. Just as section 6707A defines "listed transaction" by reference to

a Treasury regulation, section 921 defines "misdemeanor crime of domestic

violence" by reference to state law (among other things). 18 U.S.C.

§ 921(a)(33)(A)(i). And analogous to how a Treasury regulation allows the IRS to

identify listed transactions by "notice," some state laws include reckless conduct

in their definition of domestic assault. *Voisine*, 579 U.S. at 695 ("34 States plus

the District of Columbia"). That was enough for the Court to conclude that "[the

term 'misdemeanor crime of domestic violence'] plainly encompasses reckless

assaults." *Id.* at 698 n.6. And so it was also reasonable for the IRS to imagine

that section 6707A might plainly abrogate the notice-and-comment requirement

based on a cross-reference.

Second, the IRS's re-enactment theory of congressional clarity was also

viable. The principle that "Congress is presumed to be aware of an

administrative or judicial interpretation of a statute and to adopt that interpretation

when it re-enacts a statute without change" is well established. *Lorillard*, 434

U.S. at 580. It is not a far stretch from that principle to the IRS's proposition that

acquiescence can render congressional intent "clear" or "plain." A fair view of the

legislative history supports applying that proposition here: Congress did indeed "have multiple opportunities to clarify its interpretation of 6707A" but chose to "reinforce a reporting regime that was operated without notice and comment and that, under Congress's supervision, has grown considerably in scope." *Mann*, 539 F. Supp. 3d at 762. It was therefore reasonable for the IRS to interpret section 6707A as "clearly" abrogating the notice-and-comment requirement based on congressional reenactments.

In sum, these two theories (now rejected in the Sixth Circuit) were reasonable when the IRS made them, at least on this Court's view of their merits. Both effectively have been used to prove congressional clarity before, albeit in other contexts, and either theory could support a finding of clear congressional intent here. The IRS's position based on these arguments is therefore "reasonable" on the merits and "substantially justified" under section 7430.

> **b.   Circuit court decisions do not alter the Court's conclusion that the IRS's position was "reasonable" on the merits.**

What of the Sixth Circuit opinion overturning the district court's grant of summary judgment in *Mann*? Or the IRS's recent loss on this same issue in the Eleventh Circuit? *Green Rock LLC v. Internal Revenue Serv.*, No. 23-11041, 2024 WL 2821767 (11th Cir. June 4, 2024). It is true that circuit court decisions are entitled to great weight in determining whether the position of the United States was justified. 26 U.S.C. § 7430(c)(4)(B)(iii) ("[T]he court shall take into account whether the United States has lost in courts of appeal for other circuits

on substantially similar issues.").  Do the Sixth Circuit's decision in *Mann* and the Eleventh Circuit's decision in *Green Rock* establish that the IRS's position in this administrative proceeding was always meritless?

No.  The IRS's position "'can be justified even though it is not correct.'" *Noble v. Barnhart*, 230 F. App'x 517 (6th Cir. 2007) (quoting *Pierce*, 487 U.S. at 566 n.2).  In fact, "courts need to guard against being subtly influenced by the familiar shortcomings of hindsight judgment" when factoring the ultimate result into a judgment about whether the Government's position is substantially justified.  *Tauscher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005) (Roberts, J.) (internal citations and quotations omitted).  "[J]ust as discovery of contraband does not establish probable cause, nor an accident negligence, nor poor returns an imprudent trustee, so too a loss on the merits does not mean that legal arguments advanced in the context of our adversary system were unreasonable." *Id.* at 1174.  Thus, the fact that the Sixth Circuit rejected the IRS's position does not establish that the position was unreasonable.

In fact, even though the Sixth Circuit ultimately rejected the IRS's position in *Mann*, the Court's opinion confirms that the IRS's arguments were reasonable.[9]  The appellate court acknowledged that the IRS's arguments push

---

[9] Because the Eleventh Circuit's opinion broadly accords with the Sixth Circuit's *Mann* opinion, the Court does not analyze it separately. *See Green Rock*, 104 F.4th at 226–29; *see also Green Rock, LLC v. Internal Revenue Serv.*, 654 F. Supp. 3d 1249, 1252 (N.D. Ala. 2023) ("This court . . . finds *Mann Construction* persuasive and adopts its reasoning.").

the needle in the right direction but concluded that the IRS failed to prove Congress's intent was "clear." That is, the Sixth Circuit's opinion credits important premises underlying the IRS's two arguments about congressional clarity.

Regarding the IRS's cross-reference theory, the appellate court agreed that "the cross-reference is probative of whether Congress was aware of the IRS's transaction-listing procedures." *Mann*, 27 F.4th at 1146. However, "that does not alone suffice to show an express exemption." *Id.* The Sixth Circuit's rejection of the IRS's cross-reference theory thus boils down to a matter of degree: a cross-reference is probative evidence of a clear exemption; this cross-reference was just not clear enough. "Probative but not clear enough" does not translate to "no reasonable basis in fact or law" in this Court's lexicon.

As for IRS's re-enactment theory, the appellate court again agreed with the IRS that "Congress . . . sometimes may be deemed to ratify acts which it might have authorized and give the force of law to official action unauthorized when taken." *Id.* at 1147 (internal citations and quotations omitted). But, the Sixth Circuit continued, "[i]naction . . . does not always[] mean ratification. And it rarely suffices to show express modification of the APA's bedrock procedural guarantees[.]" *Id.* Thus, the Sixth Circuit again acknowledged that the IRS had some basis in fact and law, it just concluded the evidence was not enough to prove a "clear" congressional intent.

All in all, Sixth Circuit's reversal in *Mann* does mean the IRS was ultimately incorrect; but it does not mean the IRS was not substantially justified. If anything, by validating the IRS's foundational premises, the Sixth Circuit shows that the IRS's reading of 6707A was reasonable.

### 2.     The IRS's position implicated a "novel" and "complex" issue.

The more novel and complex an issue, the more likely the Government's position on that issue was substantially justified. *See, e.g.*, *Nalle*, 55 F.3d at 192 ("[C]ourts have held that petitioners had failed to show the government's position was not substantially justified . . . when the issue was difficult or novel."). Courts in this circuit distinguish between "cases in which 'the government lost because it vainly pressed a position flatly at odds with the controlling case law' and cases in which 'the government lost because an unsettled question was resolved unfavorably.'" *Griffith*, 987 F.3d at 564 (quoting *Tauscher*, 396 F.3d at 1174 (Roberts, J.) (internal quotations and citations omitted)). As shown below, whether the IRS must put listing notices through notice and comment was, at the time of the administrative proceeding, a novel and complex issue. This factor accordingly favors finding that the IRS's position was substantially justified.

### a.     Whether listing notices had to comply with notice and comment was a "novel" issue until the Sixth Circuit decided *Mann*.

There was no controlling case law for the IRS to "vainly press against" when the IRS imposed the penalty on Plaintiff; Notice 2017-10's validity was an unsettled question. As the Magistrate Judge observed after the Sixth Circuit's

decision, those courts addressed this "novel" issue "[i]n the absence of any analogous precedent." *Mann Constr., Inc. v. United States*, 2023 WL 9229108 (E.D. Mich. June 14, 2023).

Plaintiff tries to fabricate a wall of case law against which the IRS might have vainly pressed against, but it is too flimsy. Mot. at 8, ECF No. 61 ("During the administrative proceedings from 2020 through 2022, the IRS had various opportunities to reverse course as the caselaw dictated."). Plaintiff cites the *Mann* district court's denial of the IRS's motion to dismiss and another district court's preliminary injunction of a different listing notice, but neither case helps Plaintiff. The *Mann* district court subsequently granted summary judgment to the IRS on the validity of the listing notice at issue there. And it did so before Plaintiff's conference with IRS Appeals. *CIC* provides Plaintiff no more support. If anything, the case ultimately helps the IRS, for that district court found that the IRS's position was substantially justified and denied the plaintiff's motion for fees. *See CIC Servs., LLC v. IRS*, 2023 WL 6457224 (E.D. Tenn. July 12, 2023), *report and recommendation adopted*, 2023 WL 5821768 (Sept. 8, 2023). This means Plaintiff's present position that the IRS was not substantially justified is more at odds with the case law than was the IRS's position on listing notices when Plaintiff conferenced with IRS Appeals.

Of course, listing notices' validity is no longer a novel issue. The Sixth Circuit settled the issue in *Mann* while Plaintiff's administrative refund request was pending. This timeline does not, however, entitle Plaintiff to recover the fees

and costs it incurred for the portion of its administrative proceeding after the IRS lost *Mann*. This is because the IRS did not "vainly press[] against" *Mann* during the administrative proceeding. The Court reaches this conclusion for two reasons.

First, as noted above, the IRS took its position in the administrative proceeding before the Sixth Circuit decided *Mann*. The novelty of the issue must be judged according to only the case law in existence when the Government took its position. *See, e.g.*, *Nalle*, 55 F.3d at 191 ("the question is whether the [Government] acted unreasonably—that is, whether [it] knew or should have known that [its] position was invalid *at the onset* [of the proceeding]." (emphasis added) (internal citations omitted)). When the IRS took its position, *Mann* was simply not there for it to press against.

Second, the IRS did not take a new "position" in the administrative proceeding by not responding to Plaintiff's refund request after the Sixth Circuit decided *Mann*. Again, section 7430 defines the "position of the United States" in an administrative proceeding according to one of only two things: a deficiency notice or an IRS Appeals decision letter. Plaintiff received neither in response to its refund request. Nor can the IRS's delay in responding establish a "position of the United States." This flows, by negative implication, from the statute's omission of "delay in responding," "failure to respond," or anything of the sort from its definition of "position of the United States." To hold otherwise, this Court

would have to "find an unwritten exception to the statute."[10]  *Friends of Benedictines in Holy Land, Inc. v. Comm'r of Internal Revenue*, 150 T.C. 107, 115 (2018).  If the Court declines to apply an atextual exception, Plaintiff loses because there is no "position of the United States" on their refund request.  *See Dodson v. United States*, No. 3:12-cv-1164-J-34JRK, 2013 WL 7137570 (M.D. Fla. Dec. 9, 2013) (recommending that the court reject a request for fees incurred between the decision of IRS Appeals and the initiation of litigation because there was no "position of the United States" on the issue during that period), *report and recommendation adopted*, 2014 WL 407359 (M.D. Fla. Feb. 4, 2014).

But even if the Court were inclined to recognize an inaction exception to the "position" requirement, the delay here would not qualify for such an exception.  All cases that impute a position to the IRS based on its inaction do so based on much longer periods of inaction.  *See, e.g.*, *Reynoso*, 2011 WL 3473366, at *1–2 (over two years); *cf. Grisanti v. United States*, No. 3:05CV12-D-A, 2006 WL 2908642 (N.D. Miss. Oct. 10, 2006) (over two years) (imposing fees in connection with the judicial proceeding).  By contrast, Plaintiff's refund request here was pending for a little over six months.  What is more, the Sixth Circuit

---

[10] At least one court, to be sure, has grafted such an exception onto the statute. *Reynoso v. United States*, No. 10-00098 SC, 2011 WL 3473366 (N.D. Cal. Aug. 9, 2011).  But the greater weight of authority refuses to apply an atextual failure-to-respond exception. *See, e.g.*, *Fla. Country Clubs, Inc. v. Comm'r*, 122 T.C. 73 (2004), *aff'd*, 404 F.3d 1291 (11th Cir. 2005); *Dodson v. United States*, No. 3:12-cv-1164-J-34JRK, 2013 WL 7137570 (M.D. Fla. Dec. 9, 2013), *report and recommendation adopted*, 2014 WL 407359 (M.D. Fla. Feb. 4, 2014).  The Court does not resolve this split because it is unnecessary to decide the case.

decided *Mann* in the middle of that six-month period. So, the IRS's position

could have been (arguably) unjustified for only three months plus a handful of

days. And, for almost all that time, the IRS could have petitioned for a writ of

certiorari. U.S. Sup. Ct. R. 13 ("a petition for a writ of certiorari to review a

judgment in . . . a United States court of appeals . . . is timely when it is filed with

the Clerk of this Court within 90 days after entry of the judgment."). This

difference leads the Court to hold that the IRS did not take a contra-*Mann*

position over those three months (assuming an inaction exception could ever be

warranted).

Plaintiff's case differs from the cases recognizing an inaction exception in

another material respect: in all the inaction exception cases, the plaintiffs tried to

avoid a lawsuit by notifying the IRS of its error. *See, e.g., Reyno*so, 2011 WL

3473366, at *1–2 (follow-up letters and multiple phone calls); *cf. Grisanti*, 2006

WL 2908642, at *3 (N.D. Miss. Oct. 10, 2006) (repeated demands and requests

for their refund). Plaintiff here made no such efforts. Its fee table shows that,

days after the Sixth Circuit decided *Mann*, Plaintiff drafted a "letter to IRS

reiterating request for disallowance of claim based on Mann Construction." Ex. F

at 7, ECF No. 61-6. Yet Plaintiff never sent that letter to the IRS, as far as the

Court is aware. Instead, Plaintiff spent the next three months, and tens-of-

thousands of dollars, preparing to file the Complaint (as it had been doing for the

previous three months).[11]  *See id.*  Plaintiff could have obviated all these costs

and all this time by simply sending the letter.  Because it did not, Plaintiff's case

would be even less likely to trigger an inaction exception (if one existed).

> **b.** **Whether listing notices had to comply with notice and comment was also a "complex" issue in that it depends on congressional "clarity."**

Clarity is a slippery concept.  *See* Brett M. Kavanaugh, *Fixing Statutory*

*Interpretation*, 129 Harv. L. Rev. 2118, 2118 (2016) ("[J]udges often cannot make

that initial clarity versus ambiguity decision in a settled, principled, or

evenhanded way"); Frank H. Easterbrook, *The Role of Original Intent in Statutory*

*Construction*, 11 Harv. J.L. & Pub. Pol'y 59, 62 (1988) ("There is no metric for

clarity"); *see generally* Ryan D. Doerfler, *How Clear is "Clear,"* 109 Va. L. Rev.

651 (2023).  The level of clarity a statute needs to exempt an agency from the

notice-and-comment requirement is no exception.  The case law on section 559

establishes nothing like a bright-line rule.  *See, e.g.*, *Mann*, 27 F.4th at 1144–45

("Congress [need not] 'employ magical passwords in order to effectuate an

exemption from the Administrative Procedure Act.'" (quoting *Marcello v. Bonds*,

349 U.S. 302, 310 (1955))).

The complexity of clarity manifested here.  In the words of the Magistrate

Judge deciding the *Mann* plaintiff's motion for fees, the issue of whether section

6707A lifted the notice-and-comment requirement was "nebulous" in that the

---

[11]  The Court expects it would have serious misgivings about the "reasonableness" of these fees, if it reached the issue.

courts had to "resort[] to first principles." 2023 WL 9229108, at *5. But those principles did not produce an obvious result, for the reasons mentioned in the previous paragraph and as discussed in the section on the merits above. Rather, to borrow from the *Mann* Magistrate Judge again, the clarity principles were "too broad or abstract to provide any useful guidance" about how clear is clear enough. *Id.* So, in the end, both courts in *Mann* made a "judgment call." *Id.* If the Government loses on a "judgment call," section 7430 does not subject it to fees and costs. The Court is thus disinclined to award fees to Plaintiff here.

### 3. The *Mann* district court's grant of summary judgment and other courts' denials of similar fee motions supply "objective indicia" of the IRS's reasonableness here.

Although the Court is mindful that the results reached by other courts (so-called "objective indicia") are entitled to less weight than the Court's own view of the merits, the objective indicia here bolster the Court's conclusion that the IRS's position was substantially justified.

There might be objective indicia of unreasonableness present here, too. At least two circuit courts of appeals—the Sixth Circuit in *Mann* and the Eleventh Circuit in *Green Rock*—have set aside listing notices after rejecting the IRS's interpretation of section 6707A.

The IRS has not, however, lost every time they have argued that section 6707A abrogates the APA's notice-and-comment requirement. They won at the district court in *Mann*, as mentioned above. 539 F. Supp. 3d at 763. The *Mann* district court granted summary judgment to the IRS on whether listed-transaction-

defining notices need to undergo notice and comment.  *Id.* at 757–62.  The IRS persuaded the court of both its cross-reference theory and its re-enactment theory.

The split between the district court and circuit court in *Mann* leans in the IRS's favor here because "[a] split in the courts leans in the government's favor." *Griffith*, 987 F.3d at 571.  This rule makes a great deal of sense.  After all, to be "substantially justified" within the meaning of section 7430, a position need only have enough basis in fact and law to satisfy a "reasonable person."  *Comer*, 958 F.2d at 139–40 (quoting *Pierce,* 487 U.S. at 563–65).  A United States District Court surely exceeds the qualifications of a "reasonable person."  Thus, although the *Mann* district court's result has been rejected, it proves that reasonable minds could differ over whether Congress "clearly" expressed an intent in 6707A to remove listing notices from the notice-and-comment requirement.

*Griffith* confirms the import of the *Mann* district court's judgment.  In that case, the Sixth Circuit resolved in the Government's favor a split of objective indicia like the one here.  The appellate court there was reviewing a denial of a fees motion.  *See Griffith*, 987 F.3d at 561.  The fees motion turned on the same issue the Court is considering here: whether the Government's position was substantially justified.  *Id.*  There (as here) some district courts had sided with the Government.  *Id.* at 571.  Three district courts considered the issue there; two sided with the Government.  *Id.*  The Government then lost all three in a consolidated appeal.  *Id.*; *see also Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786,

796 (6th Cir. 2018). The Sixth Circuit in *Griffith* found that "the 'objective indicia' of reasonableness point toward a finding that the government acted reasonably" based in part on the district courts that sided with the Government. 987 F.3d at 571. The similar split here points to the same finding.

And, even if this split was not enough to tip the objective indicia factor in the IRS's favor, the Magistrate Judge in *Mann* and another district court in *CIC* each provide additional "objective indicia" weighing in the IRS's favor, perhaps even more on point than the district court in *Mann*. After the Sixth Circuit decided *Mann* against the IRS, the *Mann* plaintiff moved for fees (as Plaintiff here has). The Magistrate Judge recommended that the district court deny the motion for attorney's fees because, she reasoned, the IRS's position in *Mann* was "substantially justified." Another district court in this circuit reached a similar result. *CIC*, 2023 WL 6457224, at *6–8 (E.D. Tenn. July 12, 2023) (recommending a fees motion be denied in a case where the IRS relied on identical arguments), *report and recommendation adopted*, No. 3:17-CV-110, 2023 WL 5821768 (E.D. Tenn. Sept. 8, 2023). The IRS's "string of successes" on the substantial justification issue is strong evidence of the reasonableness of the IRS's position. *Griffith*, 987 F.3d at 571 (quoting *Pierce*, 487 U.S. at 569).

### 4. Conclusion on Administrative Proceeding

In sum, Plaintiff is not entitled to any fees or costs incurred in connection with the administrative proceeding because the IRS took a substantially justified position. All three substantial justification factors reinforce this holding. First and

foremost, the IRS plausibly argued that section 6707A exempted listing notices from the general notice-and-comment requirement.  The IRS's argument was backed by a reasonable reading of references to IRS regulations in section 6707A and by reasonable inferences drawn from congressional re-enactment of section 6707A.  Second, the novelty and complexity of the exemption issue also warrants giving the IRS leeway.  Third and finally, the fact that a district court found in the IRS's favor tips the overall balance of the objective indicia toward "substantial justification."

### B. The IRS Took a "Substantially Justified" Position in the Judicial Proceeding by Refunding Plaintiff's Penalty.

The Court begins again by identifying the IRS's position in the judicial proceeding.  Unlike with administrative proceedings, section 7430 does not specify when the United States takes a "position" in a judicial proceeding.  *See* § 7430(c)(7).  The Government's position in a judicial proceeding is usually set by its first response to the plaintiff's complaint.  *See Huffman*, 978 F.2d at 1148.  But here, the IRS essentially conceded the case before filing a responsive pleading or motion.  *See* ECF No. 12; 12-1.

The IRS's prompt concession renders its position in the judicial proceeding "substantially justified."  Courts generally deem the Government's prompt concession to be "substantially justified."  *Midwest Sports Med. & Orthopedic Surgery, Inc. v. United States*, No. C-3-95-443, 2000 WL 1692947 (S.D. Ohio Sept. 19, 2000) (concession after reviewing responses to discovery requests);

*Ekman v. Comm'r*, 184 F.3d 522 (6th Cir. 1999) (concession after documentation was produced at a meeting).

The prompt concession is not the only commonality this case has with *Midwest* and *Ekman*. In both those cases, the plaintiff brought new information to the IRS's attention. So too did Plaintiff here. Although Plaintiff protests it did not unveil any new documentation when it filed this action, it did raise new law. Before it filed suit with this Court, Plaintiff had not apprised the IRS of the impact the Sixth Circuit *Mann* decision would have on this case; Plaintiff did so for the first time when it filed this suit. A new legal development can have the same effect on the "substantial justification" of the IRS's position as a newly unveiled fact. New facts and new law should therefore be treated the same for "substantial justification" purposes. Treating the Sixth Circuit's decision in *Mann* the same way that the *Midwest* and *Ekman* courts treated newly discovered facts, the Court holds that the IRS's position in the judicial proceeding was "substantially justified" because it refunded the $10,000 penalty shortly after learning of *Mann*'s impact on this case.

Plaintiff argues that IRS's concession is not the end of the matter. Plaintiff contends the "position of the United States" in this "judicial proceeding" encompasses more than just the IRS's concession. *See* Reply at 7–9, ECF No. 63. Prompt concession does not insulate the Government from fees, Plaintiff purports, if the Government took an otherwise unreasonable position prior to the filing of a complaint. *See id.*

Plaintiff rides this argument headlong into the bifurcated approach. Under the bifurcated approach to section 7430, courts determine the Government's "position" in a "judicial proceeding" according to its actions only after the complaint or petition has been filed with the court; prelitigation conduct is irrelevant. *See, e.g.*, *Pac. Fisheries, Inc. v. United States*, 484 F.3d 1103, 1111 (9th Cir. 2007). Following this approach, the IRS's prompt concession is the beginning and end of the inquiry into whether the Government's position in the judicial proceeding was substantially justified. *See Friends of Benedictines in Holy Land, Inc. v. Comm'r of Internal Revenue*, 150 T.C. 107, 117–118 (2018).

Plaintiff's argument alternatively fails because the IRS's prelitigation position was always reasonable. *See generally, supra*, III. A. From when the IRS first imposed fees until the Sixth Circuit decided *Mann*, the IRS never act unreasonably. It was not unreasonable for the IRS to advance a plausible argument, which persuaded a district court, on a novel issue. *See generally id.*

The same goes for after the *Mann* decision. From when the Sixth Circuit decided *Mann* until the filing of Plaintiff's Complaint, the IRS still never acted "unreasonably." True, in an ideal world, the IRS would have granted Plaintiff's refund request immediately after *Mann* was published. But it was not unreasonable to leave Plaintiff's request undecided for three months after the Sixth Circuit decided *Mann*, especially considering that Plaintiff did not notify the IRS of *Mann*'s effect on its refund request before suing and that the IRS had

ninety days after the Sixth Circuit decided *Mann* to petition for a writ of certiorari.[12] U.S. Sup. Ct. R. 13.

In sum, the IRS's repayment of the penalty it imposed on Plaintiff constitutes a "substantially justified" position in the judicial proceeding. Under the bifurcated approach, that is the end of the matter: Plaintiff is not entitled to any fees or costs for the judicial proceeding. But even under an approach that would allow an award of litigation fees for unreasonable post-administrative-pre-litigation conduct, Plaintiff still would not be entitled to fees because the Court finds that the IRS did not engage in any unreasonable prelitigation conduct.

## IV.    CONCLUSION

For these reasons, Plaintiff's motion is **DENIED**. The Clerk shall terminate ECF No. 61. The case remains closed.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**

---

[12] For more on this point see, *supra*, III.A.2.a.